# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMES EARL CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17CV1250 RLW |
| ) | |
| NANCY BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court affirms the decision of the Commissioner.

## I. Procedural History

Plaintiff protectively filed an application for DIB on June 25, 2013 and an application for SSI on March 25, 2014. (Tr. 40) Plaintiff alleged disability beginning January 23, 2013 due to HIV, spinal stenosis, and irritable bowel syndrome. (Tr. 99) Plaintiff's claims were denied, and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 98-114) On September 8, 2015, Plaintiff testified at a hearing before the ALJ. (Tr. 55-96) In a decision dated January 5, 2016, the ALJ determined that Plaintiff had not been under a disability from January 23, 2013 through the date of the decision. (Tr. 40-50) On February 6, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the September 8, 2015 hearing, Plaintiff appeared without counsel. Plaintiff testified that he was focused on getting his AIDS under control and that the arthritis and spinal stenosis stemmed from that. The ALJ noted that some medical records were missing. Plaintiff stated that since September 2013 he only saw Dr. David Parks for treatment. Plaintiff did not have those records, and the ALJ indicated that his office would request medical records. Plaintiff further testified that he was treated for a broken leg and ankle resulting from a fall. In addition, he had a nerve block in his neck. The ALJ emphasized the importance of having all of Plaintiff's medical records. Plaintiff testified that he saw an orthopedic surgeon, Dr. Zehnder, in December 2013, along with Dr. Parks. (Tr. 55-72)

Upon questioning by the ALJ, Plaintiff testified that he was 51 years old, weighed 237 pounds, and measured 5 feet, 7 inches. He graduated from high school and had some college education. Plaintiff last worked on September 26, 2013. He had worked for Overland Shade Company repairing, installing, cleaning, and ordering window treatments. He believed that he lifted 150 pounds at the most, and he stood and walked 95 percent of the day. Plaintiff further testified that he had been dealing with pain for a long time, had limited ability to lift his arms above his head, experienced migraines, and had difficulty holding his neck up. He stated that experienced pain in his neck, back, elbow, shoulders, arms, and knees. He took Percocet and Vitamin D. Plaintiff also had problems in his pelvic/groin area. (Tr. 74-78)

Plaintiff stated he could lift 30 to 40 pounds with his right hand, but he could only lift 5 to 10 pounds with his left hand due to a past elbow dislocation resulting from a motorcycle accident. He had trouble sitting and standing for long periods of time. Plaintiff believed he could stand in one place for 20 to 30 minutes before he needed to sit down. He could sit

2

anywhere from 20 minutes to 2 hours before he had to move around. On a typical day, Plaintiff woke up, cleaned up, watched TV, and tried to walk around the block. He testified that his knees tightened up and hurt if he sat too long. He also went to the store and watched a lot of Netflix. He did not have difficulty taking care of himself other than getting in and out of the bathtub. He was able to cook, do laundry, and drive. (Tr. 78-80)

Plaintiff testified that he was in constant pain with his neck, left arm, left knee, and left ankle. He had pain in his lower back and sometimes could not walk or stand up. He also experienced tingling and numbness in his left foot, as well as a spasm in his left leg. Plaintiff had difficulty with digestion as well. His biggest problem was his neck pain, which caused migraines, ringing in the ears, and breathing difficulty. In addition, he complained about his lack of mobility. He had herniated and bulging discs and thought that traction would help. Medication only helped the pain a little. On an average day, his neck pain was a 12 on a scale of 1 to 10. (Tr. 80-83)

A Vocational Expert ("VE") also testified at the hearing. The VE stated that Plaintiff had only one job as an installer for blinds and shades. The occupation was semi-skilled with a medium exertional level according to the Dictionary of Occupational Titles ("DOT") and a medium to heavy exertional level as described by Plaintiff. (Tr. 84-86)

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past job. The person was limited to light work and could lift and carry up to 20 pounds occasionally and 10 pounds frequently. Further, the individual could stand and/or walk for 6 hours and sit for 6 hours during an 8-hour workday. He could never climb ladders, ropes, and scaffolds but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. In addition, he could never work at unprotected heights or deal with mechanical parts. He could

3

occasionally work in vibration. Given this hypothetical, the VE testified that the individual could not perform Plaintiff's past job but could perform jobs as a packager, assembler, or cleaner. (Tr. 86-88)

For the second hypothetical, the ALJ asked the VE to assume a person who could perform sedentary work; lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; and stand/walk for 2 hours and sit for 6 hours in an 8-hour workday. The VE testified that the individual would be unable to perform Plaintiff's past job or any other work. Plaintiff asked the VE about jobs allowing an employee to lie down or go home if he or she felt sick. The VE stated that any interference with the flow of work would prevent an individual from working in the national economy. The ALJ kept the record open to obtain medical records from Dr. Parks and Dr. Zehnder. (Tr. 88-96)

In a Function Report – Adult dated October 19, 2013, Plaintiff reported that he spent the day watching TV, doing chores, fixing meals, walking around the block, and visiting with neighbors. Plaintiff was able to take care of his personal needs; prepare meals; perform house and yard work; drive; shop for food, clothes, and entertainment; handle money; and socialize. He had problems getting along with his family. Plaintiff reported that his conditions affected his ability to lift, squat, bend, stand, climb stairs, concentrate, and use his hands. He had bulging and herniated discs that made movement painful, and his migraines caused difficulty with concentration. He believed he could walk 5 blocks before needing to rest for 2 minutes. He was able to follow written and spoken instructions very well. Plaintiff also handled stress and changes in a routine very well. (Tr. 238-45)

4

## III. Medical Evidence

On March 4, 2013, Plaintiff established care with Dr. David A. Parks. Plaintiff complained of abdominal pain, HIV, and GERD/gastritis. He also complained of migraine headaches, irritable bowel syndrome, fatigue, and shortness of breath. Plaintiff had been diagnosed with HIV in January 2013, but he was more concerned with the abdominal pain. Dr. Parks noted that Plaintiff was evasive about his past medical history and did not answer many questions asked. Dr. Parks stated that it was difficult to determine a comprehensive assessment of Plaintiff and that a psychiatric diagnosis was likely. Dr. Parks diagnosed irritable bowel syndrome, shortness of breath, HIV, unspecified communicable disease, abdominal pain, migraine, burn of trunk, headache, and other malaise and fatigue. (Tr. 365-68)

Plaintiff returned to Dr. Parks on April 5, 2013. Plaintiff's complaints included HIV/AIDS, anxiety/depression, chronic multiple joint pain, and chronic C-spine degenerative disc disease with bilateral radicular pain. Dr. Parks noted limited range of motion of shoulders secondary to pain of neck and radicular pain to arms. Plaintiff also had limited range of motion of hips, knees, and ankles secondary to arthritic changes. Dr. Parks prescribed medication and advised Plaintiff to follow up in one month. (Tr. 378)

On April 12, 2013, Plaintiff complained of fatigue. He also decided to participate in an HIV study. (Tr. 377) On May 10, 2013, Plaintiff's complaints included neck pain, HIV, pain in left arm, and itchy skin rash. He had cervical tenderness and pain when rotating his neck with radiation to his shoulders. In addition, Plaintiff had full range of motion of extremities, chest, and back with no muscular pain. His mental status appeared anxious, depressed, with an abnormal affect. Dr. Parks noted that medication had improved Plaintiff's mood slightly. Dr. Parkes assessed HIV, scabies, irritable bowel syndrome, shortness of breath, migraine, fatigue,

unspecified vitamin D deficiency, herpes simplex, burn of trunk, and esophageal reflux. (Tr. 372-76)

Follow up visits with Dr. Parks on May 24, 2013 and June 7, 2013 showed urethritis and cheilitis in addition to his other complaints. Testing revealed gonorrhea, which Dr. Parks treated with medication. (Tr. 370-71)

On July 5, 2013, Plaintiff returned to Dr. Parks for a follow-up on his HIV study. Plaintiff complained of fatigue and diffuse joint pain. Dr. Parks advised Plaintiff about the importance of adherence and taking medications as directed. (Tr. 369) On August 30, 2013, Plaintiff reported that his abdominal pain and his anxiety, depression, and insomnia were much improved. (Tr. 360-64)

On September 16, 2013, Plaintiff underwent an MRI of the lumbar spine. He complained of low back pain and leg pain with the pain on the left greater than the right. The MRI revealed disc bulging and degenerative changes associated with moderate spinal stenosis at the L4-L5 level. Left posterolateral disc herniation was also evident. Plaintiff also complained of right shoulder pain and right neck pain. An MRI of the cervical spine performed on September 19, 2013 showed disc bulging and degenerative changes resulting in mild circumferential narrowing of the spinal canal at the C3-C4 level and foraminal narrowing at multiple levels. (Tr. 346-49)

On September 27, 2013, Plaintiff attended a follow-up visit with Dr. Parks. Plaintiff's chief complaint was fatigue. Musculoskeletal exam revealed limited range of motion of the low back and neck pain. Plaintiff had radicular pain in upper extremities on the left C4, C5 distribution and bilaterally at L4 with decreased sensation in the ulnar nerve distribution. Dr. Parks recommended nerve root injections and physical therapy. (Tr. 354-59) On October 25,

6

2013, Plaintiff complained of malaise and fatigue, as well as a bump and bruise above the right leg ankle from September 15. (Tr. 538-41)

On December 12, 2013, non-examining consultant Margaret Sullivan, Ph.D. noted that Plaintiff did not allege a psychiatric impairment. However, he had a diagnosis of anxiety, depression, and insomnia. Dr. Sullivan opined that Plaintiff's mental impairments were improved with medication and were not severe. (Tr. 101-02)

Plaintiff was treated by Dr. Scott W. Zehnder on December 13, 2013 for complaints of a left fibula fracture after falling down the stairs and inverting his left ankle 5 weeks ago. Dr. Zehnder advised Plaintiff to wear an air cast boot and return in 6 weeks. (Tr. 565-66)

On January 9, 2014, Plaintiff received a cervical root block of the left C3-C4. (Tr. 552-53) A cervical spine MRI on January 16, 2014 revealed left-sided neural foraminal narrowing of the C3/4 level resulting from facet and uncovertebral disease. (Tr. 554)

Plaintiff returned to Dr. Zehnder on February 13, 2014. Dr. Zehnder assessed a left ankle bimalleolar fracture and prescribed physical therapy. (Tr. 568-69) On April 10, 2014, Dr. Zehnder noted that Plaintiff's ankle improved and that Plaintiff was tolerating swelling and occasional pain with no real complaints. Plaintiff told Dr. Zehnder that he was back to work. (Tr. 563-64)

In 2015, Plaintiff continued seeing Dr. Parks for evaluation and management of Plaintiff's HIV and other conditions. Plaintiff complained of pain in his left knee. Dr. Parks noted mild tenderness to the left knee, some mild edema around the patella, and mild discomfort with weight bearing and walking. Dr. Parks also noted full range of motion of extremities, chest, and back. Mental status was normal. Plaintiff reported doing very well overall with no adverse effects from medication. (Tr. 496-519)

7

## IV. The ALJ's Determination

In a decision dated January 5, 2016, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. He had engaged in substantial gainful employment from the alleged onset date through September 2013. However, Plaintiff had not engaged in substantial gainful activity for a continuous 12-month period. The ALJ found that Plaintiff had severe impairments including lumbar and cervical spine disc bulging and degenerative disc disease with stenosis, osteopenia, and neuralgia; human immunodeficiency virus (HIV); and obesity. Plaintiff's other impairments of migraines, irritable bowel syndrome, history of left elbow dislocation, hypertension, GERD, hypogonadism, insomnia, and herpes simplex were well-managed with conservative treatment and were not severe. In addition, Plaintiff's depression and anxiety did not cause more than minimal limitation in his ability to perform basic mental work activities and were non-severe. (Tr. 40-44)

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Upon consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work in that he could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. In addition, Plaintiff should never climb ladders, ropes, and scaffolds. He could occasionally climb ramps and stairs; balance; stoop; kneel; crouch; and crawl. He should never work at unprotected heights or with moving mechanical parts. Plaintiff was able to occasionally work in vibration. The ALJ determined that Plaintiff was unable to perform any past relevant work. However, based on his age, at least high school education, work experience, and RFC, the ALJ found that jobs existed in

8

significant numbers in the national economy which Plaintiff could perform. These jobs included packaging, assembler, and cleaner. Therefore, the ALJ concluded that Plaintiff was not under a disability from January 23, 2013 through the date of the decision. (Tr. 44-49)

## **V. Legal Standards**

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal

9

quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[1] factors and whether the evidence so contradicts

---

[1] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the

plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

In his brief in support of the Complaint, Plaintiff raises two arguments. First, Plaintiff asserts that substantial evidence does not support the RFC finding because the ALJ erroneously "played doctor" and used his lay opinion to interpret the medical data in determining Plaintiff's RFC. Second, Plaintiff argues that the ALJ failed to fully and fairly develop the record by failing to obtain opinion evidence regarding Plaintiff's functional limitations. Defendant responds that the ALJ properly assessed Plaintiff's RFC based on the medical treatment records and other relevant evidence.

### A. Plaintiff's RFC Determination

Plaintiff argues that the ALJ improperly determined Plaintiff's RFC by relying on the ALJ's own medical opinion and not evidence in the record. RFC is defined as the most that a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Because "'[t]he ALJ bears the primary

---

claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

11

responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.'" *Martise*, 641 F.3d at 923 (quoting *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir.2010)). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016; *Martise*, 641 F.3d at 923.

The record shows that the ALJ properly considered the medical evidence and based the RFC determination on all of the evidence contained in the record. "'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quoting *Cox v. Astrue*, 495 F.3d 614, 619-20)). The ALJ found that Plaintiff had the RFC to perform light work with additional limitations. The ALJ noted that the medical record showed that Plaintiff's impairments were managed with minimal treatment, with a lack of any treatment between late 2013 and March 2015. Further, the findings during exams showed mild tenderness in some areas with full range of motion in his extremities, back and neck. In addition, the treatment was conservative, and Plaintiff's pain was managed with medication. (Tr. 46-47) "'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" *Brown v. Astrue,* 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue,* 578 F.3d 882, 885 (8th Cir. 2009)).

The ALJ also noted that Plaintiff maintained a high level of activity despite his alleged impairments. Plaintiff indicated that he could do laundry, wash dishes, cook, drive, walk around the block on a daily basis, perform house and yard work, and take care of his daily needs. The Court finds that these daily activities, in conjunction with the medical evidence, support the ALJ's determination that Plaintiff was able to perform light work. *See Id.* (finding substantial

evidence supported a conclusion that the plaintiff was not disabled where she was able to clean, cook, work out, visit family, take care of personal needs, do laundry, shop, and drive).

Further, the ALJ considered Plaintiff's strong work history but noted that Plaintiff continued working after this alleged date of disability. The ALJ found that Plaintiff did not receive treatment right after he voluntarily resigned in 2013, and when he returned to treatment in March 2015 he was doing well with minimal findings on exam. (Tr. 48) The ability to work with an alleged impairment and with no evidence of significant deterioration in a plaintiff's condition demonstrates that the impairments are not disabling. *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005).

In addition to discussing Plaintiff's activities which conflicted with his allegations of disability, the ALJ thoroughly assessed the medical evidence as noted above. While the ALJ acknowledged Plaintiff's allegations of disabling symptoms and MRI results showing some abnormalities, the ALJ also noted the normal physical exams with only mild findings. In addition, the ALJ accounted for the diagnose of neuralgia, stenosis and osteopenia by adding specific limitations in the RFC, including weight lifting limitations, climbing restrictions, postural limitations, and restrictions with regard to heights, moving parts, and vibration. (Tr. 46) Thus, the Court concludes that substantial evidence supports the ALJ's RFC determination. *See Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (finding the ALJ's determination of plaintiff's RFC was supported by substantial evidence where there were no medically determinable impairments to support the level of pain alleged by plaintiff, treating physicians consistently noted normal strength, MRI tests showed only mild osteoarthritis, and medication controlled the plaintiff's pain).

## B. Development of the Record

Next, Plaintiff claims that the ALJ failed to properly develop the record and should have either contacted Plaintiff's treating physician for clarification or ordered a consultative examination to obtain opinion evidence related to Plaintiff's physical limitations. With regard to consultative examinations, "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether Plaintiff is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citation omitted). Further, the duty to re-contact a treating physician for clarification arises only if a crucial issue is undeveloped. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). Here, the record contained thorough documentation of Plaintiff's impairments. In addition, the ALJ held the record open to provide Plaintiff the opportunity to submit additional medical evidence. "[T]he fact that [Plaintiff] appeared pro se does not relieve him of the burden to establish disability." *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citation omitted). "'[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.'" *Id.* (quoting *Clark v. Shalala,* 28 F.3d 828, 830–31 (8th Cir.1994)). The Court finds that the ALJ sufficiently developed the record in this case. Therefore, the ALJ did not breach a duty to develop the record because the record contained sufficient evidence from which to make an informed decision. *Ulrich v. Astrue*, No. 2:10CV89 JCH(LMB), 2011 WL 7401681, at *13 (E.D. Mo. Dec. 2, 2011). Thus, the Court concludes that substantial evidence based on the record as a whole supports the ALJ's determination that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. An appropriate Judgment shall accompany this Memorandum and Order.

Dated this 21st day of August, 2018.

_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**